UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVIS B.,                          )
                                   )
         Plaintiff                 )
                                   )
v.                                 )   No. 1:18-cv-00009-LEW
                                   )
NANCY A. BERRYHILL,                )
Acting Commissioner of Social Security, )
                                   )
         Defendant                 )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ lacked substantial evidence in support of his Step 3 finding that the plaintiff's impairments did not meet or equal any of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P, and his Step 4 determination of the plaintiff's residual functional capacity ("RFC"), undermining his Step 5 finding of non-disability, and failed to appropriately weigh and consider the opinion evidence of record. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 9) at 3. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff's date last insured ("DLI") for SSD benefits was December 31, 2015, Finding 1, Record at 18; that, through his DLI, he had the severe impairments of generalized anxiety disorder, attention deficit disorder, impulse control disorder, and substance use disorder, Finding 3, *id.*; that, through his DLI, he had no impairment or combination of impairments that met or medically equaled in severity any of the Listings, Finding 4, *id.*; that, through his DLI, he had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could not work near hazards such as unprotected heights and dangerous machinery and could perform simple, routine, repetitive tasks that did not involve interaction with the general public or more than incidental (*i.e.*, up to one-sixth of an eight-hour workday) interaction with co-workers and could adapt to occasional changes in work processes, Finding 5, *id.* at 19; that, through his DLI, considering his age (26 years old, defined as a younger individual, on his DLI), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 22; and that he, therefore, had not been disabled at any time from April 14, 2013, his alleged onset date of disability, through December 31, 2015, his DLI, Finding 11, *id.* at 23. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be

supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Steps 3 and 4 of the sequential evaluation process. At Step 3, a claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

At Step 4 of the sequential evaluation process, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Yuckert*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Asserted Step 3 (Listings) Error

At Step 3, the ALJ found that, through the plaintiff's DLI, his mental impairments, considered singly or in combination, did not meet or medically equal the criteria of then-applicable Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.09 (substance addiction disorders). *See* Record at 18-19.[2]

He determined that the plaintiff's impairments did not satisfy the "paragraph B" requirements of those Listings because he had only mild restriction in activities of daily living, moderate difficulties in social functioning and in concentration, persistence, or pace, and no episodes of decompensation that were of extended duration. *See id*. He explained:

> [I]n psychological evaluations conducted by [agency examining consultant] Donna Gates, Ph.D., in October 2013 and January 2015, the [plaintiff] indicated that he had no problems with daily activities. Treating and examining sources have usually described [him] as polite, pleasant, socially appropriate and cooperative. Although he has appeared at times to have deficiencies of attention and concentration, he has reported improvement in those areas when he takes prescribed medication. The evidence does not support a finding that he is markedly limited with respect to concentration, persistence or pace. He has not required inpatient or intensive outpatient treatment for mental illness.

*Id*. at 19 (citations omitted) He added that the evidence failed to establish the presence of the "paragraph C" criteria because the plaintiff "would not have been expected to decompensate if faced with even a minimal increase in mental demands and was not unable to function outside of the area of his home or some other highly supportive living arrangement." *Id*.

---

[2] The commissioner revised the Listings pertaining to the evaluation of mental disorders effective January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 (Sept. 26, 2016) (noting that the revisions apply to claims pending on or after the effective date as well as to new applications filed on or after that date). Because the ALJ's decision was dated December 15, 2016, *see* Record at 24, the prior regulations apply.

The plaintiff complains that the ALJ "populated" these Listings "absent any direction from any expert medical source." Statement of Errors at 6. He adds that the ALJ further erred in failing to address "paragraph A" of the Listings or to consider two additional pertinent Listings, Listings 12.06 (anxiety related disorders) and 12.08 (personality disorders). *See id*.

That the ALJ made a Step 3 determination without the benefit of an expert opinion does not, in itself, demonstrate reversible error. The ALJ neither overlooked any expert opinion concerning the matter nor was obliged as a matter of law to call an expert. *See, e.g.,* Social Security Administration, Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-5-34(A)(2) (ALJ has discretion whether to call a medical expert in determining whether a claimant's impairment(s) meet a listing); *DuBois v. Berryhill*, No. 1:17-cv-00076-JDL, 2017 WL 6000340, at *3 (D. Me. Dec. 3, 2017) (rec. dec., *aff'd* Feb. 28, 2018) (pursuant to HALLEX § I-2-5-34(A)(1), "an ALJ must consult with a medical expert only when considering finding that a claimant's impairments medically equal a listing, not when he . . . is considering finding that they do not").

The plaintiff does not challenge the specific findings on which the ALJ did rely in determining that his impairments did not meet either the paragraph B or paragraph C criteria of the Listings. *See* Statement of Errors at 6. With respect to paragraph A, as the commissioner notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 13) at 4-5 n.5, the error of failing to consider it is harmless. A claimant cannot satisfy the requirements of the relevant Listings solely by meeting the criteria of paragraph A. *See* Listings 12.02, 12.04, 12.06, 12.08, 12.09(A)-(D). Thus, while a failure to address paragraph A "is a legal error, . . . it is one made in favor of [the claimant], as it assumes that [the claimant] has met the criteria of [p]aragraph A." *Mariano v. Soc. Sec. Admin.*, Civil Action No. 3:08-cv-01738 (JCH), 2010 WL 1286888, at *9 (D. Conn. Mar. 30, 2010).

Finally, and in any event, the plaintiff falls short of demonstrating entitlement to remand based on error in the ALJ's Step 3 Listings determination in that he fails to make a *prima facie* case that his impairments satisfied the requirements of the any of the Listings at issue. *See* Statement of Errors at 6; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (in order for a claimant "to show that his impairment matches a listing, it must meet *all* of the specified medical criteria"; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify") (emphasis in original) (citation and footnote omitted).

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Asserted Step 4 (RFC) Error

In assessing the plaintiff's RFC, the ALJ explained that he had given (i) "little weight" to the opinions of agency nonexamining consultants David R. Houston, Ph.D., and Robert Maierhofer, Ph.D., that the plaintiff had no severe mental impairment as of his DLI "because the updated medical evidence establishes that his psychological disorders impose more than slight limitations on his work capacity[,]" (ii) "little weight" to a Department of Veterans Affairs ("VA") rating of the plaintiff as 70 percent disabled because VA standards differ from those of the commissioner and the VA did not assess the plaintiff's RFC, and (iii) "[s]ome weight . . . to Dr. Gates' assessments of the [plaintiff]'s work capacity, although the evidence supports a finding that he is limited to work within" the restrictions set forth in the ALJ's RFC determination. Record at 22. He also generally explained that "providers' observations and the [plaintiff]'s own statements regarding his activities, mental status and response to medication are not supportive of a conclusion that he cannot work within the limitations described above." *Id.*

The plaintiff argues that, in this case, as in *Vallier v. Berryhill*, No. 1:17-cv-00064-DBH, 2017 WL 5665539 (D. Me. Nov. 26, 2017) (rec. dec., *aff'd* Dec. 12, 2017), and *Staples v. Berryhill*,

6

("*Lisa Staples*"), No. 1:16-cv-00091-GZS (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017), the ALJ relied not on expert opinion but, rather, on his own interpretation of the raw medical evidence to assess mental RFC, exceeding the bounds of his competence as a layperson. *See* Statement of Errors at 7-9; *see also, e.g., Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an ALJ is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to assess [RFC] based on a bare medical record.").

Nevertheless, I agree with the commissioner that the ALJ did not interpret raw medical evidence but, rather, relied in part on the Gates opinion and in part on the plaintiff's own subjective statements to assess his mental RFC, distinguishing this case from *Vallier* and *Lisa Staples*. *See* Opposition at 12-14.

Dr. Gates evaluated the plaintiff in October 2013 in connection with a prior application for disability benefits and again in January 2015 in connection with the current application. *See* Record at 635-38, 762-66. On both occasions, she interviewed the plaintiff, conducted a mental status examination, administered intellectual testing, and offered a Medical Source Statement concerning his work-related mental capacities. *See id*. While, in 2013, she made no diagnosis, she noted that testing placed the plaintiff in the high range of borderline intellectual ability and that he had antisocial personality features. *See id*. at 637-38. She concluded that he could "maintain his personal appearance and generally behave in an emotional[ly] stable manner[,]" could "manage a mild level of work-related stress and function independently on simple tasks[,]" and could "be a reliable worker." *Id*. at 638.

In 2015, she again made no diagnosis. *See id*. at 765. However, she noted that testing placed the plaintiff in "the low average range of intellectual ability[,]" *id*. at 764, and that he

7

appeared "capable of following work rules, relating adequately to others, and using judgment commensurate with intellectual ability[,]" could "manage a mild level of work-related stress[,]" could "function independently on simple tasks[,]" and could "behave in an emotionally stable manner[,]" *id*. at 765.

While the ALJ did not explain which of Dr. Gates' limitations he adopted, *see id*. at 22, his findings that the plaintiff "could perform simple, routine, repetitive tasks" and "could adapt to occasional changes in work processes[,]" Finding 5, *id*. at 19, are consistent with, and supported by, her conclusions that the plaintiff could "function independently on simple tasks[,]" use "judgment commensurate with [his] intellectual ability[,]" and "manage a mild level of work-related stress[,]" *id*. at 765; *see also id*. at 638.

Nonetheless, the plaintiff contends that the Gates opinions are, in effect, support without substance because Dr. Gates did not assess a medically determinable impairment from which any limitations could flow. *See* Statement of Errors at 5 ("The [ALJ's] finding of multiple severe impairments immediately puts it at odds with [Dr. Gates'] assessment. An alleged reliance to any degree upon the opinions of Dr. Gates cannot bridge this fundamental disconnect.") (citation omitted), 7 ("Dr. Gates's statements do not reflect limitations attributable to any medically determinable impairment and the judge therefore takes nothing from them.") (citations omitted). The plaintiff adds that, because Dr. Gates made no diagnosis, her statements necessarily reflect "unimpaired functioning" and, in any event, "do not provide a foundation for the limitations identified in the RFC such as an inability to interact with the general public or only have incidental contact with coworkers." *Id*. at 6 (citations omitted).

It does not follow from the fact that Dr. Gates made no diagnosis that she assessed no work-related functional limitations or that the ALJ was obliged to jettison her opinions. In line with her

8

findings on mental status examination and intellectual testing, she deemed the plaintiff capable of performing simple tasks, using judgment commensurate with his intellectual ability, and managing mild stress. *See id*. at 638, 765. These were significant work-related limitations, which the ALJ adopted. By contrast, the agency nonexamining consultants whose opinions the ALJ purported to give "little weight" in *Vallier* and *Lisa Staples* offered no RFC assessment. *See Vallier*, 2017 WL 5665539, at \*3-5; *Lisa Staples*, 2017 WL 1011426, at \*3-4.

The plaintiff correctly notes that the Gates opinions provide no support for the ALJ's findings that he could not interact with the public and could have only incidental interaction with co-workers. *Compare* Finding 5, Record at 19 *with id*. at 638, 765. Nonetheless, while the ALJ did not explain the derivation of those limitations, it is reasonably apparent that they reflect his partial crediting of the plaintiff's own subjective statements.

The plaintiff testified at length at hearing concerning his alleged difficulties with social interaction, including several occasions on which he had lost his temper and "flipped on" co-workers or supervisors. *See, e.g., id*. at 62-63 (fired after getting into fight with foreman and threatening to kill co-worker), 64-65 (quit when supervisor refused to adjust his schedule), 65-66 (lost his cool with staff sergeant who was trying to correct him, leading to diagnosis of ADHD and honorable discharge from military service), 79 ("[T]he Adderall is helping, but I'm still short-fused.").

Following that testimony, the ALJ posed two hypothetical questions to the vocational expert ("VE") present at hearing. Initially, he asked him to assume an individual with limitations corresponding to those he ultimately assessed. *Compare id*. at 84 *with* Finding 5, *id*. at 19. The VE testified that such an individual could perform the jobs of custodian, light housekeeping, and groundskeeper. *See id*. at 86.

Stating that he was "consider[ing] a little bit more of the testimony and the evidence before me," the ALJ then asked the VE to assume the following addition to the previous hypothetical question:

> [T]he supervisor would have to be willing to allow [the hypothetical individual] unscheduled rest breaks through the course of the eight-hour day to . . . remove himself and to withdraw from the worksite in order to compose his emotions because he became upset over a host of things, some of which might be something that was said to him in passing even though he has little contact with others on his job and because he bec[a]me frustrated with the way that he was being required to perform a job, even though he only talks to the supervisor in very rare instances he might be criticized by that supervisor.

*Id*. at 86-87. He added that these unscheduled breaks would average 10 minutes per hour in order for the hypothetical worker to continue. *See id*. at 87. The VE testified that there would be no work for such an individual. *See id*.

Therefore, from all that appears, the limitations on social interaction assessed by the ALJ derive from his partial crediting of the plaintiff's own subjective statements, the weighing of which the plaintiff does not separately challenge. *See* Statement of Errors at 3-10. "It is not error to assess restrictions more favorable to a claimant than those set forth by medical experts on the basis of the adoption of a claimant's own testimony.'" *Black v. Berryhill*, No. 1:16-cv-00572-JAW, 2017 WL 4220116, at *8 (D. Me. Sept. 22, 2017) (rec. dec., *aff'd* Mar. 28, 2018) (quoting *Starrett v. Colvin*, No. 2:14-cv-152-JHR, 2015 WL 3966127, at *4 (D. Me. June 29, 2015)). *See also, e.g., Peak v. Colvin*, No. 2:15-cv-67-JHR, 2015 WL 7681256, at *4 (D. Me. Nov. 24, 2015) ("That the [ALJ] gives 'some credence' to the [claimant]'s own testimony about the effects of her anxiety, inability to handle stress, and tendency to withdraw does not 'facially conflict' with the opinions of [the experts]. It merely explains the [ALJ]'s decision to include in the [claimant]'s RFC mental

limitations that he might not otherwise have included, giving the [claimant] the benefit of the doubt.") (citation omitted).[3]

Remand, accordingly, is unwarranted on the basis of this point of error.

## C. Asserted Error in Weighing Opinion Evidence

The plaintiff finally complains that the ALJ erred in ignoring the April 30, 2014, opinion of VA psychologist Kerry Kimball that he had "[o]ccupational and social impairment with reduced reliability and productivity[.]" Statement of Errors at 10; Record at 757. He contends that the omission is both "startling" and prejudicial because the ALJ's second hypothetical question to the VE, which the VE testified would preclude all work, "appear[ed] to reflect" this limitation. Statement of Errors at 10.

As the commissioner observes, *see* Opposition at 17-18, psychologist Kimball was not a treating source but, rather, an examining consultant, much like Dr. Gates, *see* Record at 756-61. This court has held that a failure to articulate the weight given to an opinion of a one-time examining consultant can be harmless error, *see Smythe v. Astrue*, No. 2:10-cv-251-GZS, 2011 WL 2580650, at *5 (D. Me. June 28, 2011) (rec. dec., *aff'd* July 21, 2011), and that is the case here.

The Kimball opinion is neither an RFC assessment (that is, an assessment of "the most [a claimant] can still do despite [his] limitations[,]" 20 C.F.R. § 404.1545(a)(1)) nor suggests that the plaintiff would require breaks of as much as 10 minutes per hour to compose his emotions to be able to continue to work. Indeed, as discussed above, the second hypothetical question appears to have been based on the plaintiff's own testimony at hearing.

---

[3] The plaintiff offers no reasoned argument that the ALJ's further finding that he could not work near hazards such as unprotected heights and dangerous machinery is unsupported by substantial evidence. *See* Statement of Errors at 7-9; Finding 5, Record at 19. In any event, as the commissioner notes, *see* Opposition at 13-14, this finding also derives from the plaintiff's own testimony and other statements, *see* Record at 69, 585, 652.

11

Remand, accordingly, is also unwarranted on the basis of this final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 8th day of February, 2019.

        /s/ John H. Rich III
        John H. Rich III
        United States Magistrate Judge